IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 13-cv-02837-CBS

RONALD CLARENCE CALHOUN,
　　　Plaintiff,
v.

CAROLYN W. COLVIN, Acting Commissioner Social Security Administration,
　　　Defendant.

---

MEMORANDUM OPINION AND ORDER
---

　　　This civil action comes before the court pursuant to Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33 and 1381-1383c, for review of the Commissioner of Social Security's final decisions denying Mr. Calhoun's applications for Supplemental Security Income ("SSI") and Social Security Disability Income ("SSDI") benefits. [1]  Pursuant to the Order of Reference dated August 1, 2014, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c).  (See Doc. # 41).  The court has reviewed the Complaint, Defendant's Answer, Plaintiff's Opening Brief, Defendant's Response Brief, Plaintiff's Reply Brief, the administrative record, the entire case file, and the applicable law and is sufficiently advised in the premises.

---

[1] SSDI pays benefits to people with disabilities who have worked and paid Social Security taxes on their earnings.  SSI pays benefits to people with disabilities whose income and resources are below set limits.  Some people with disabilities receive both SSDI and SSI benefits because their SSDI benefits are below the SSI payment level.

I.    Background

Mr. Calhoun filed a Title II application in December 1994 and was found to be disabled due to end-stage kidney disease that required dialysis and met or medically equaled Listing 6.02 in Title 20, Chapter III, Part 404, Subpart P, Appendix 1. (*See* Administrative Record ("Tr.") (Doc. # 26) at 55, 166). An award of disability benefits was made on January 10, 1995. (Tr. 165). It is undisputed that while he was receiving disability benefits, Mr. Calhoun had a kidney transplant on July 3, 1997. (Tr. 26, 167, 711).

On September 16, 2003, an initial determination was made that after his kidney transplant, Mr. Calhoun's disability ceased effective September 15, 2003. (Tr. 165). The initial determination was affirmed upon reconsideration on February 4, 2004, and Mr. Calhoun filed a timely request for a hearing. (Tr. 165). Mr. Calhoun appeared without a representative and testified at the hearing held before Administrative Law Judge ("ALJ") Michael G. Heitz on September 19, 2005 in Denver, Colorado. (Tr. 165). Vocational Expert ("VE") Pat Pauline also appeared and testified at the hearing. (Tr. 165). On October 13, 2005, ALJ Heitz determined that after his kidney transplant, Mr. Calhoun had "experienced medical improvement so that he retains the capacity to perform his past relevant work" and his disability had ceased on September 15, 2003. (Tr. 170). Mr. Calhoun did not appeal this decision. [2]

---

[2] Mr. Calhoun testified that he did not stop receiving these benefits until 2007. (Tr. 35). He appears to seek a waiver of his obligation to repay this overpayment. (*See* Doc. # 1 at 18 of 77). However, a claimant seeking to challenge an overpayment must seek an initial decision. *See* 20 C.F.R. § 416.1402(c) (noting that an initial decision includes "[w]hether an overpayment must be repaid to us"). There is no indication in the record that Mr. Calhoun ever challenged the overpayment, pursued his administrative remedies, or received a final decision as to the overpayment.

On April 17, 2008, Mr. Calhoun filed an application for SSDI benefits. (Tr. 55). He also filed an application for SSI benefits with a protective filing date of March 25, 2008.[3] (Tr. 55). He claimed in both applications that he became disabled on September 30, 2007. (Tr. 55). His claims were initially denied on August 8, 2008 and on October 17, 2008 he requested a hearing. (Tr. 55). Mr. Calhoun appeared and testified without representation at the hearing held on January 20, 2010 before ALJ Michael G. Heitz. (Tr. 55). VE Anthony F. Manuele also testified at the hearing. (Tr. 55). During the hearing, Mr. Calhoun requested reopening of the October 13, 2005 decision. (Tr. 55). While the ALJ found no basis for reopening the decision, he nevertheless considered Mr. Calhoun's alleged disability since October 13, 2005. (Tr. 55). The ALJ issued his written decision on March 4, 2010, concluding that Mr. Calhoun was not under a disability within the meaning of the Act from October 14, 2005 to the date of the decision. (Tr. 63). Mr. Calhoun did not appeal this decision.

Mr. Calhoun was charged with two felony counts of sexual assault on April 4, 2002. (Tr. 195-96). He pled guilty on October 11, 2002 to a reduced charge of unlawful sexual contact, a Class One misdemeanor, and was sentenced to two years of probation. (*See* Doc. # 1-1 at 42-51, 54-55, 57-62 of 118, Tr. 217-226, 229-230, 232-237). He did not appeal directly from the judgment of conviction. (Tr. 156).

In July 2003, Mr. Calhoun admitted a probation violation. On November 21, 2003, his probation was revoked and a two-year sentence was imposed and suspended on the condition he successfully complete two years of sex offense specific probation. (*See* Doc. # 1-1 at 71-90 of 118, Tr. 246-265). On November 22, 2004, Mr. Calhoun moved for termination of his

---

[3] To qualify as an effective claim, an application for SSI benefits must be submitted on a prescribed form. 20 C.F.R. § 404.610. However, a written statement indicating a person's intent to claim benefits can, if it meets certain requirements, establish a protective filing date. *Id.* § 404.630.

probation, the trial court denied his motion, and the Colorado Court of Appeals affirmed.  (Tr. 241 (*People v. Calhoun*, 04CA2558 (Colo. Ct. App. Oct. 26, 2006))).  Mr. Calhoun did not petition for certiorari review.  (Tr. 156).  On February 8, 2007, Mr. Calhoun's probation was revoked as unsuccessful and he served time in jail.  On September 15, 2009, he filed a Crim. P. 35(c) motion.  (Tr. 152).  The district court denied the motion and the Colorado Court of Appeals affirmed.  (Tr. 152-153 (*People v. Calhoun*, 09CA2577 (Colo. Ct. App. Sept. 15, 2011))). [4]

On June 9, 2011, Mr. Calhoun filed an application for SSI benefits, alleging disability beginning on March 5, 2010.  (Tr. 67, 393).  His claim was initially denied on November 7, 2011 and on November 21, 2011 he filed a timely request for a hearing.  (Tr. 67, 75).  Mr. Calhoun appeared and testified without representation at the hearing held on March 26, 2013 before ALJ Lowell Fortune.  (Tr. 10, 23, 392).  VE Bonnie Martindale and Medical Expert Jack LeBeau also testified at the hearing.  (Tr. 25-29, 41-44, 360-366).  At the hearing, Mr. Calhoun clarified that he filed his application strictly for the purpose of continuing his challenge to the cessation of his benefits in 2005.  (Tr. 33-40 ("the only reason I filed this claim was to address that wrongful termination of my disability benefits in 2005.  I did not file this claim under the auspices of attempting to open up a new claim for disability.")).

> I can work. And I've always said I can work. But that's where the misunderstanding is, that my benefits were unfairly cut off back in 2005 at the request of the state, my federal benefits were cut off at the request of the state criminal justice system because of a wrongful conviction.

(Tr. 38).  Mr. Calhoun wanted "to file a request to reopen an old claim."  (Tr. 38, 40).  The ALJ explained to Mr. Calhoun that the 2005 decision by ALJ Heitz was "not affected by

---

[4] Despite Mr. Calhoun's many legal challenges to his criminal conviction, it has never been invalidated.  (*See* Tr. 150, 240, *Calhoun v. Attorney General of Colorado,* 745 F.3d 1070 (10th Cir. 2014), *cert. denied*, 135 S. Ct. 376 (2014)).

any request from any state" and that "he made his decision based upon the medical

records and the testimony." (Tr. 38-39).  He explained that

> [t]he 2005 decision . . . was what's called a continuing disability review, CDR.
> That means that you were, . . . receiving benefits, but in 2003, Social Security
> decided you were no longer disabled.  And then they ceased your benefits,
> effective 2003.  You appealed that, and that appeal was up to Judge Heitz, okay?
> And Judge Heitz said that that decision was correct, that you were no longer
> disabled.  So that decision was made in 2003. . . [I]t's based on an application that
> you filed December 30, 1994.  You were awarded benefits in January 1995.  Your
> benefits were terminated . . . Judge Heitz made his decision that your physical
> condition had improved.  And that's why his decision was that you were no longer
> disabled.  There was nothing in the opinion that had anything to do with . . . [s]ome
> state conviction or anything like that, sir.

(Tr. 49-50).

The ALJ issued his written decision on April 2, 2013, concluding that Mr. Calhoun was

not under a disability within the meaning of the Act since June 9, 2011, the date he filed

application.  (Tr. 16).  On June 3, 2013, Mr. Calhoun sought review of the ALJ's decision.  (Tr.

6).  Mr. Calhoun filed this action in his *pro se* capacity on October 17, 2013.  (*See* Doc. # 1;

Doc. # 21 (treating "Appeals Council's failure to act on plaintiff's appeal for nearly nine months"

as "tantamount to a denial of his appeal and affirmance of the denial of his claim")).  The

Appeals Council received additional evidence and on March 20, 2014 denied Mr. Calhoun's

request for review.  (Tr. 1-4).  The court has jurisdiction to review the final decisions of the

Commissioner.  42 U.S.C. § 405(g).


II.     First Claim for Relief Alleging Unfair Cessation of Benefits

Mr. Calhoun brings this case pursuant to 42 U.S.C. § 405(g) and/or § 1383(c)(3).  (See

Doc. # 1 at 1 of 77, ¶ 1).  He challenges the cessation of the disability benefits he was awarded

in 1995.[5]  The ALJ's April 2, 2013 decision addressed only Mr. Calhoun's June 9, 2011

application for SSI benefits alleging disability beginning on March 5, 2010.  The ALJ's decision

did not address the cessation of his previous benefits.  (Tr. 10-16, 34-41, 44-50).  The ALJ's

April 2, 2013 decision, not Mr. Calhoun's claim regarding cessation of benefits in 2005, is the

final administrative decision subject to judicial review.  (Tr. 10-16).  Section 1383(c)(3), which

incorporates 42 U.S.C. § 405(g), gives a court jurisdiction to review only the "final decision of the

Commissioner of Social Security made after a hearing."  Section 405(g) is the exclusive

jurisdictional basis for judicial review in cases arising under the Act.  *See* 42 U.S.C. § 405(h)

("No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any

person, tribunal, or governmental agency except as herein provided.").  Under the

Commissioner's regulations, the ALJ's decision is the agency's final decision when the Appeals

Council denies review.  20 C.F.R. §§ 416.1481, 422.210.  *See also Califano v. Sanders*, 430

U.S. 99, 108 (1977) (noting that section 405(g) "clearly limits judicial review to a particular type

of agency action");  *Weinberger v. Salfi*, 422 U.S. 749, 767 (1975) (noting that the term "final

decision" is undefined in the Act, and "its meaning is left to the [Commissioner] to flesh out by

regulation").


A.      Standard of Review

        In reviewing the Commissioner's final decision, the court must "closely examine the

record as a whole to determine whether the . . . decision is supported by substantial evidence

---

[5] As relief, he seeks repayment of benefits back to October 2007 through the present in the
amount approximately $59,999.00, "the zeroing of the balance due on overpayment currently being paid"
in the amount of approximately $40,000.00, reinstatements of benefits, and "Colorado Vocational
Rehabilitation Division job assistance at a benefit level . . . equal to that had there not been the
unwarranted cessation in benefits."  (*Se* Doc. # 1 at 18 of 77).

and adheres to applicable legal standards." *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (internal quotation marks and citation omitted).  *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (court "must determine whether the . . .  decision of nondisability, . . . is supported by substantial evidence, *i.e.*, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks and citation omitted).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988).  The court "must affirm . . . if the decision is supported by substantial evidence."  *Eggleston v. Bowen*, 851 F.2d 1244, 1246 (10th Cir. 1988) (citing 42 U.S.C. § 405(g)).  The court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency."  *White v. Massanari*, 271 F.3d 1256, 1260 (10th Cir. 2001), *as amended on denial of reh'g* (April 5, 2002).  *See also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.") (internal quotation marks and citation omitted);  *Mounts v. Astrue*, No. 11-1172, 479 F. App'x 860, 867 (10th Cir. May 9, 2012) (court cannot reweigh the evidence and come to a different conclusion than the ALJ) (citation omitted).

B.    Analysis

An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A); §

1382c(a)(3)(B).  The Commissioner has developed a five-step evaluation process for

determining whether a claimant is disabled under the Act.  *See Williams*, 844 F.2d at 750-52

(describing the five steps in detail).  "If a determination can be made at any of the steps that a

claimant is not disabled, evaluation under a subsequent step is not necessary."  *Id.* at 750.  At

step four of the evaluation process, an ALJ must determine a claimant's Residual Functional

Capacity (RFC).  The RFC is what a claimant is still "functionally capable of doing on a regular

and continuing basis, despite [her] impairments; the claimant's maximum sustained work

capability."  *Williams*, 844 F.2d at 751.  "The claimant bears the burden of proof through step

four of the analysis."  *Neilson*, 992 F.2d at 1120.

At step five, the burden shifts to the Commissioner to show that a claimant can perform

work that exists in the national economy, taking into account his RFC, age, education, and work

experience.  *Neilson*, 992 F.2d at 1120.

> . . . The decision maker first determines the type of work, based on physical
> exertion (strength) requirements, that the claimant has the RFC to perform.  In this
> context, work existing in the economy is classified as sedentary, light, medium,
> heavy, and very heavy.  To determine the claimant's "RFC category," the decision
> maker assesses a claimant's physical abilities and, consequently, takes into
> account the claimant's exertional limitations (i.e., limitations in meeting the
> strength requirements of work). . . .
>
> If a conclusion of "not disabled" results, this means that a significant
> number of jobs exist in the national economy for which the claimant is still
> exertionally capable of performing. . . . The decision maker must then consider all
> relevant facts to determine whether the claimant's work capability is further
> diminished in terms of jobs contraindicated by nonexertional limitations.
> . . .
> Nonexertional limitations may include or stem from sensory impairments;
> epilepsy; mental impairments, such as the inability to understand, to carry out and
> remember instructions, and to respond appropriately in a work setting; postural
> and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug
> dependence; dizziness; and pain. . . .

*Williams*, 844 F.2d at 751-52. (citations omitted).

Mr. Calhoun was 57 years old when he filed his June 9, 2011 application for disability benefits.  (Tr. 29).  He lives alone.  (Tr. 48).  He is obese and has occasionally been morbidly obese.  (Tr. 27-29).  He has 17 years of education, including a Bachelor of Science degree in physics, one year of graduate school, and additional training and education.  (Tr. 30-31, 275-289).  He has a record of working as a civil engineer.  (Tr. 31).  Following the five-step evaluation process, the ALJ determined that Mr. Calhoun: (1) had not engaged in substantial gainful activity since June 9, 2011, the date he applied for disability benefits, (2) had severe impairments of "status post renal transplant" and "obstructive sleep apnea," (3) did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Title 20 C.F.R., Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926), (4) had the RFC to perform the full range of light work as defined in Title 20 CFR 416.967(b), and (5) was capable of performing past relevant work as a civil engineer and mechanical engineer that does not require the performance of work-related activities that are precluded by his RFC.  (Tr. 13-16, 23-50).  The ALJ concluded that Mr. Calhoun was not disabled.  (Tr. 16).  The Appeals Council received additional evidence from Mr. Calhoun and denied his request for review.  (Tr. 1-4).

Mr. Calhoun does not specifically challenge the ALJ's April 2, 2013 ruling.  He has represented and continues to represent that he is able to work.  (Tr. 38).  He has done handyman work and worked for the State of Colorado in 2000 as a civil engineer.  (Tr. 30-32).[6] He has been offered and declined work that does not pay an adequate.  (See Doc. # 1 at 13-16 of 77).  He alleges that he has been rejected for higher paying jobs because of his criminal conviction.  (*See id.,* Tr. 15, 31-33).  Whether or not Mr. Calhoun is able to secure employment

_____

[6] He was terminated from his employment with the State of Colorado based on a dispute with his employer that is unrelated to this case.  (Tr. 32-33).

due to his criminal conviction, the entire record since September 16, 2003 demonstrates that he can work and is not disabled under the Act. 42 U.S.C. § 1382c(a)(3)(B); *Garrison v. Colvin*, 564 F. App'x 374, 378 (10th Cir. 2014) (alleged obstacles unrelated to a claimant's physical and mental abilities to work are not relevant to the step-four determination) (citing 42 U.S.C. § 423(d)(2)(A) (stating that an individual is disabled only if his physical or mental impairments are so severe that he is unable to do his previous work or other substantial gainful employment)). *See also Wright v. Paul Revere Life Ins. Co.*, 291 F. Supp. 2d 1104, 1113 (C.D. Cal. 2003) (claimant was not working because of his indictment and arrest for felony tax evasion, not because of any physical disability).

Mr. Calhoun wishes to challenge the cessation of the disability benefits that were previously awarded to him in 1995. The initial determination that Mr. Calhoun's disability had ceased was made on September 16, 2003. (Tr. 165). The initial determination was affirmed upon reconsideration on February 4, 2004, and Mr. Calhoun filed a timely request for a hearing. (Tr. 165). After the hearing, the ALJ determined that after his kidney transplant, Mr. Calhoun had "experienced medical improvement so that he retains the capacity to perform his past relevant work" and his disability had ceased on September 15, 2003. (Tr. 170). Because Mr. Calhoun did not appeal the ALJ's October 13, 2005 decision to the Appeals Council or to the U.S. District Court, he is bound by it. 20 C.F.R. § 416.1455 (noting that an ALJ's decision is binding unless an claimant seeks Appeals Council review), § 416.1481 (noting that, if the Appeals Council denies review, the ALJ's decision is binding on a claimant "unless you . . . file an action in Federal district court."). *See also* 42 U.S.C. § 405(g) (giving a claimant 60 days to seek judicial review of the Commissioner's final decision).

During the January 20, 2010 hearing, Mr. Calhoun requested reopening of the October 13, 2005 decision. (Tr. 55). The ALJ found no basis for reopening the decision, but did consider Mr. Calhoun's alleged disability since October 13, 2005. (Tr. 55). On March 4, 2010, the ALJ ruled that Mr. Calhoun was not disabled. (Tr. 63). Mr. Calhoun did not appeal this decision. Thus, the court lacks jurisdiction to disturb the agency's 2005 decision ceasing his benefits. See 20 C.F.R. §§ 416.1455, 416.1481.3. Further, decisions denying reopening are not ordinarily subject to judicial review. 20 C.F.R. § 416.1403(a)(5). Even if Mr. Calhoun had sought judicial review of the March 4, 2010 decision, the court would not have jurisdiction to address the earlier decision ceasing his benefits. *See Campos v. Astrue*, 373 F. App'x 880, 882 (10th Cir. 2010) ("Unless a claimant raises a colorable constitutional claim, [n]either the district court nor this court has jurisdiction to review the [Commissioner's] refusal to reopen a claim for disability benefits or [his] determination [that] such claim is res judicata." (internal citation and quotation marks omitted)). Mr. Calhoun next alleges a constitutional claim.

III.    Second and Third Claims for Relief Alleging Procedural Due Process Violation

Mr. Calhoun alleges that he was denied his procedural due process rights because he "was never notified of this new lower job acceptance requirement based on [his] criminal conviction" and because the ALJ "ignored, cut corners, denied access to transcripts and made no attempt to reconstruct the record in this case." (*See* Doc. # 1 at 16-17 of 77).

The Fifth Amendment to the United States Constitution provides that no person will "be deprived of life, liberty or property without due process of law." U.S. Const. amend. V. The Supreme Court has held that applicants for Social Security disability benefits are entitled to due process in the determination of their claims. *Mathews v. Eldridge*, 424 U.S. 319, 332–33 (1976).

11

*See also Stieberger v. Apfel*, 134 F.3d 37, 39–40 (2d Cir.1997) (denial of an application for

social security benefits can implicate the constitutional right to due process under certain

circumstances);  *Mattern v. Mathews*, 582 F.2d 248, 254 (3d Cir.1978) (a claimant's "interest in

social security benefits is a property right under the fifth amendment's due process clause")

(citing *Eldridge*, 424 U.S. at 332).  In the context of an administrative social security hearing,

due process requires only that the proceedings be "full and fair."  *Richardson v. Perales*, 402

U.S. at 401–02.  They need not be "full-blown adversarial hearing[s]."  *Bush v. Shalala*, 94 F.3d

40, 46 (2d Cir.1996).  Administrative proceedings can and should be "informal," "liberal," and

"not strict in tone and operation."  *Perales*, 402 U.S. at 400–01. Their overall conduct ultimately

"rests ... in the examiner's discretion."  *Perales*, 402 U.S. at 400.  In social security

administrative hearings, "[a]ny party to a hearing has a right to appear before the administrative

law judge . . . to present evidence and to state his or her position."  20 C.F.R. § 404.950(a).

The record reflects that Mr. Calhoun was afforded "full and fair" process.  He appeared,

testified, and was permitted to ask questions and present evidence in three hearings.  The ALJs

assembled and considered all of his medical records and considered testimony from medical

experts, vocational experts, and Mr. Calhoun.  All three of his applications for benefits received

all available levels of agency review.  *See, e.g., Navan v. Astrue*, No. 11 Civ. 6732(DLC), 2012

WL 398635, at *3 (S.D.N.Y. Feb.8, 2012) (holding that there was no due process violation

where the application that claimant sought to reopen had been "considered at all levels of

administrative review, and [claimant] was afforded a full hearing before an ALJ").  He testified

extensively in response to questioning by the ALJ regarding multiple issues related to his case

and was afforded the opportunity to ask any questions of the witnesses and the ALJ.  (Tr. 23-

50).[7]  He appealed only the April 2, 2013 ruling of the ALJ.  (Tr. 6).  The Appeals Council

received additional evidence from Mr. Calhoun before denying his request for review.  (Tr. 1-4).

The record belies Mr. Calhoun's conclusory allegations.  He has not stated a colorable claim for

denial of due process in the Commissioner's adjudication of his claims.  *See Wicks v. Colvin*,

No. 13-1542, 573 F. App'x 803, 809 (Aug. 11, 2014) (allegations did not rise to the level of a due

process violation);  *Clark v. Colvin*, No. 13-9355JC, 2015 WL 546027, at * 10 (C.D. Cal. Feb 9,

2015) (claimant did not make colorable due process claim);  *Pokluda v. Colvin*, No. 13-CV-335

GLS/ESH, 2014 WL 1679801, at *3 (N.D.N.Y. Apr. 28, 2014) (no substantive or procedural due

process deficiency in adjudication of claim);  *Fastiggi v. Comm'r of Soc. Sec.*, No. 11 CIV. 997

RA, 2014 WL 1285125, at *4 (S.D.N.Y. Mar. 31, 2014) (court lacked jurisdiction to review the

Commissioner's decision not to reopen application and claimant did not raise a colorable

constitutional claim).

IV.     Conclusion

        The court is satisfied that the record contains substantial evidence from which the

Commissioner could properly conclude under the law and regulations that Mr. Calhoun was not

disabled within the meaning of Titles II and XVI of the Social Security Act and therefore not

eligible to receive Supplemental Security Income or Social Security Disability Income benefits.

Accordingly, IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil

action is DISMISSED.

_____

[7] As to Mr. Calhoun's allegation regarding access to transcripts and reconstruction of the record (see Doc. # 1 at 17 of 77), "the prior paper file" from 2005 "no longer exists."  (Tr. 5, 18).  It was also clarified that Exhibit 15 from the record of the October 13, 2005 hearing was a one-page document dated September 16, 2003 stating that his disability benefits ceased and was unrelated to his criminal conviction (Tr. 45-50, 172).

DATED at Denver, Colorado, this 24th day of March, 2015.

BY THE COURT:


___s/Craig B. Shaffer_____
United States Magistrate Judge